*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

THADDEUS CORTREZ WILSON,

        Defendant-Appellant.

UNPUBLISHED
December 22, 2025
9:12 AM

No. 370327
Allegan Circuit Court
LC No. 2023-025733-FC

Before: LETICA, P.J., and M. J. KELLY and MARIANI, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of first-degree premeditated murder, MCL 750.316(1)(a), possession with intent to deliver 50 grams or more but less than 450 grams of cocaine, MCL 333.7401(2)(a)(*iii*), possession with intent to deliver methamphetamine, MCL 333.7401(2)(b)(*i*), felon-in-possession of a firearm (felon-in-possession), MCL 750.224f, and four counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. He was sentenced as a fourth-offense habitual offender, MCL 769.12, to concurrent terms of life imprisonment without the possibility of parole for first-degree murder and 6 to 30 years' imprisonment for the felon-in-possession. The trial court also sentenced defendant to 25 to 40 years' imprisonment for each drug conviction, as a second or subsequent drug offender, MCL 333.7413. Further, the sentencing court ordered all of defendant's felony sentences to be served consecutively to the mandatory two-year term for a felony-firearm conviction. We affirm, but remand for correction of the amended judgment of sentence.[1]

---

[1] We remand to the trial court for the ministerial task of correcting the amended judgment of sentence. MCR 7.216(A)(7). By way of background, after the bindover, the prosecution moved to add a charge of receiving and concealing a stolen firearm, MCL 750.535b, and four counts of felony-firearm with the underlying predicate offenses being the drug offenses, felon-in-possession, and receiving and concealing a stolen firearm. After oral argument, the court verbally granted the motion and noted that the prosecution needed "to file that with the Clerk's Office as a full new

## I. FACTUAL AND PROCEDURAL HISTORY

Defendant's convictions arise from the events of June 19, 2022. Defendant and his girlfriend, Lajoyia Meitzenheimer (Lajoyia), were celebrating her birthday in the park during the day with friends and family. At the end of the evening, Bree Austin-Roberts (Bree), and her husband Joseph Roberts (the victim), went over to defendant's apartment. The Roberts used to be neighbors with defendant and Lajoyia, but moved into a home a short distance away. Bree left the party with Shavonica (Shay) Evans to pick up cigarettes for the victim. While Bree and Shay were gone, defendant got into an argument with Maccreel McAlister (McAlister) regarding her search of defendant's closet for a coat to wear. When Bree and Shay returned to the party, the victim approached Bree's vehicle and indicated that defendant was "trippin," but the victim was going to calm defendant down. Bree went into the apartment when she heard gunshots. She heard someone yell that defendant shot the victim. Bree ran outside and saw the victim lying on the ground. Defendant was standing near the victim. Bree was afraid to go to the victim, fearing that defendant would shoot her. She ran to her car but could not locate her keys or her phone. Bree believed that she could drive up to the victim and run over defendant if he attempted to shoot her. After

---

information." The prosecution subsequently filed an amended felony information, adding count six (the receiving and concealing), count seven (felony-firearm for delivery/manufacture cocaine), count eight (felony-firearm for delivery/manufacture methamphetamine), and count nine (felony-firearm for the receiving and concealing). But, the prosecution failed to add a felony-firearm charge related to the felon-in-possession count.

The trial court instructed the jury consistent with the prosecution's amended information. The jury verdict was also consistent with the amended information and instructions.

At sentencing, the court said that "count seven [felony-firearm]" "is a consecutive sentence, to, I believe to count five [felon-in-possession]." This was incorrect, but it is reflected in the amended judgment of sentence.

To be consistent with the amended felony information and the jury verdict, defendant's sentence for count five (felon-in-possession) is not consecutive to any of the sentences imposed for the felony-firearm convictions, but concurrent to them. Moreover, the sentence imposed for count three (possession with the intent to deliver cocaine) must be served consecutively to the mandatory two-year term of imprisonment imposed for count seven (felony-firearm), not count eight (felony-firearm) as reflected in the amended judgment of sentence. Defendant was also acquitted of count six (receiving and concealing a stolen firearm), but convicted of felony-firearm as to that offense (count nine). The amended judgment of sentence mistakenly reflects that defendant's conviction for count four (possession with the intent to deliver methamphetamine) must be served consecutively to count nine (felony-firearm). Instead, the mandatory two-year term of imprisonment for count nine (felony-firearm) is not to be served consecutively to any other felony conviction, but concurrently with the other sentences imposed. Finally, to be consistent with the amended felony information and the jury verdict, the sentence imposed for count four (possession with the intent to deliver methamphetamine) must be served consecutively to the mandatory two-year term of imprisonment for count eight (felony-firearm), not count nine.

observing that defendant was not present, Bree ran to give aid to the victim, but he died despite the efforts of first responders.

It was the prosecutor's theory of the case that party guest McAlister entered the first-floor closet for a coat. Defendant became angry because he purportedly kept guns and drugs in that location. When the victim intervened and attempted to calm defendant, defendant fired 13 shots and struck the victim approximately 10 times. After the shooting, defendant fled to the small rural town of Colp, Illinois until he was arrested months later.

On the other hand, defendant testified that he shot the victim in self-defense. Defendant claimed that the victim had a weapon that Bree took and placed inside her vehicle. The gun was not located because the police failed to search Bree's vehicle before she drove away.

While in jail, defendant made calls and wrote letters indicating that he had a temper and essentially asking friends, specifically Rob Ester, to confirm his claim of self-defense. The jury rejected defendant's claim of self-defense and convicted him of all but one of the crimes charged.

On appeal, defendant contends that the trial court erred in limiting cross-examination of witnesses, the prosecution improperly shifted the burden of proof during its rebuttal argument, and the trial court erred in failing to sever unrelated drug charges from the homicide case. In a Standard-4 brief, defendant asserts that trial counsel was ineffective for failing to timely file a witness list and investigate his witnesses and that resentencing was necessary because of the prosecution's failure to timely serve the habitual notice.

## II. TRIAL COURT LIMITATIONS ON CROSS-EXAMINATION

Defendant first contends that the trial court deprived him of the right to confront witnesses by limiting defense counsel's cross-examination. We disagree.

Generally, whether a defendant's right of confrontation has been violated presents a question of constitutional law that the appellate court reviews de novo. *People v Bruner*, 501 Mich 220, 226; 912 NW2d 514 (2018). De novo review is conducted independently without regard to the lower court. *Id*. Preserved evidentiary issues are reviewed for an abuse of discretion. *People v Thorpe*, 504 Mich 230, 252; 934 NW2d 693 (2019). An abuse of discretion occurs when the decision falls outside the range of principled outcomes. A decision on a close evidentiary question generally cannot constitute an abuse of discretion. *Id*. at 251-252.

That said, while defendant objected at trial to the limitations on cross-examination that he now challenges on appeal, he did not object on Confrontation Clause grounds.[2] Therefore, as to

---

[2] We recognize that defendant did object to the officer's testimony that the confidential informant paid $50 to defendant for the purchase during the prosecutor's direct examination on four grounds: (1) "no proper foundation," (2) "no personal knowledge," (3) "hearsay," and (4) "confrontation clause." But, after the prosecutor offered to lay the foundation and continued to question the officer, defense counsel did not renew his objection. On appeal, defendant challenges the trial court's rulings during cross-examination as being violative of the Confrontation Clause.

Bree's testimony, his challenge on appeal is unpreserved and reviewed for plain error affecting substantial rights. See *People v Benton*, 294 Mich App 191, 202; 817 NW2d 599 (2011). We also note that, under MRE 103(a), "[a] party may claim error in a ruling to admit or exclude evidence only if the error affects a substantial right of the party[.]" Additionally, if the ruling excludes evidence, a party must inform "the court of its substance by an offer of proof, unless the substance was apparent from the context." MRE 103(a)(2). In the present case, defendant contends that the trial court improperly excluded evidence by limiting cross-examination and that resulted in a confrontation clause violation; however, he fails to cite to the offer of proof that he made or explain how its substance was apparent.

We further note that "[a]n appellate brief must contain a statement of all material facts, both favorable and unfavorable, presented fairly without argument or bias with specific page references to the transcripts." *People v Lewis*, 302 Mich App 338, 339 n 1; 839 NW2d 37 (2013) citing MCR 7.212(C)(6) and (7). "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Henry*, 315 Mich App 130, 148; 889 NW2d 1 (2016) (quotation marks and citation omitted). "The appellant himself must first adequately prime the pump; only then does the appellate well begin to flow. Failure to brief a question on appeal is tantamount to abandoning it." *Id*. at 148-149.[3] A party cannot harbor error as an appellate parachute by acquiescing to the court's handling of a matter at trial only to challenge the issue as error on appeal. *People v Buie*, 491 Mich 294, 312; 817 NW2d 33 (2012).

Defendant first alleges that the trial court erred in limiting his cross-examination of Holland Police Officer Nicole Hamberg regarding her monitoring of a drug transaction between a confidential informant and defendant in 2008. Our review of Officer Hamberg's cross-examination reveals that the prosecutor objected twice on the grounds that the question was asked and answered. In the first instance, the trial court sustained the objection. On the second occasion, the trial court allowed defense counsel to ask the question. On the third occasion, defense counsel asked Officer Hamberg to disclose the identity of the confidential informant. The prosecutor objected on relevancy grounds and based on the timing, during the fourth day of trial. Defense counsel responded that it was relevant, that he had the right to know the person's identity, and to "follow up if I choose to with an investigation." The trial court declined to have Officer Hamberg answer the question and noted that the matter would be dealt with at a different time. After the trial court's ruling, defense counsel did not seek to pass the witness until a later time or request an *in camera* hearing. Rather, both parties continued Officer Hamberg's examination and excused her when she finished testifying.

In the brief on appeal, defendant contends that the trial court's limit on cross-examination was erroneous and deprived him of the right of confrontation. However, in the trial court,

---

[3] Defendant cited generally to transcript pages in his five-page statement of facts, but he did not identify the specific objections raised, the response, and the trial court's ruling in his discussion of the issues. His argument comparing the confidential informant to Jesus Christ did not comport with the favorable, unfavorable, and without bias criteria. Despite these deficiencies, we address the merits of his issues.

defendant did not contend that the exclusion of this evidence violated confrontation rights or request an *in camera* hearing. In *People v Underwood*, 447 Mich 695, 706; 526 NW2d 903 (1994) (quotation marks and citation omitted), our Supreme Court determined that when disclosure of an informant's identity was requested, a balancing should occur that involves an *in camera* hearing:

> Thus, where the government invokes the privilege in the face of a defense request for disclosure, and where the accused is able to demonstrate a possible need for the informant's testimony, the trial judge should require production of the informant and conduct a hearing in chambers, and out of the presence of the defendant. At this hearing the court will have an opportunity to examine the informant in order to determine whether he could offer any testimony helpful to the defense. A record should be made of the in camera session and its contents sealed so that only an appellate court will have access thereto.

In the present case, the prosecutor sought to preclude the disclosure of the confidential informant's identity. Yet, defense counsel did not identify a possible need for the informant's identity. Instead he stated, "I think I have the right to know who that person was and follow up if I choose to with an investigation." Curiously, defense counsel did not seek to hold an *in camera* hearing to discern what, if any, helpful testimony the confidential informant would provide. Further, defense counsel's cross-examination of Officer Hamberg revealed that she did not personally perform the search of the confidential informant prior to any drug transaction. Moreover, Officer Hamberg could not identify whether the residence where the transaction occurred belonged to defendant. And, she did not witness the transaction because it occurred out of her sight. Indeed, if defense counsel called the confidential informant, there was a risk that the confidential informant might vividly remember the details of the transaction with respect to which Officer Hamberg's testimony was deficient. On appeal, defendant has offered nothing—from the record below or otherwise— to substantiate his suggestion that eliciting the identity of the confidential informant was necessary or would have proven helpful to his defense. Accordingly, defendant failed to demonstrate a plain error affecting his rights. This claim of error does not entitle defendant to appellate relief.

Next, defendant contends that he was deprived of his confrontation rights when he was not permitted to cross-examine Bree, the victim's wife, about a prior inconsistent statement regarding multiple people getting guns at an earlier park party and engaging in fights. In this issue, defendant does not identify the location in the record where the statements may be found, does not identify the statement as admissible under the rules of evidence, and does not challenge the basis of the trial court's ruling. And, because this was a ruling excluding evidence, defendant should have made an offer of proof. See MRE 103(a)(2). "When an appellant fails to dispute the basis of a lower court's ruling, we need not even consider granting the relief being sought by the appellant." *Denhof v Challa*, 311 Mich App 499, 521; 876 NW2d 266 (2015). Defendant also has not explained how, despite all this, his Confrontation Clause challenge might nonetheless succeed. Accordingly, defendant has failed to demonstrate entitlement to appellate relief.

Further, "[p]rior unsworn statements of a witness are mere hearsay and are generally inadmissible as substantive evidence." *People v Lundy*, 467 Mich 254, 257; 650 NW2d 332 (2002). At no point has defendant indicated how that general rule may not apply to any prior inconsistent statement of the victim's wife. And any attempt to impeach the victim's wife with

extrinsic evidence of a prior inconsistent statement would need to meet the requirements of MRE 613(b), which provides:

> Extrinsic evidence of a witness's prior inconsistent statement is admissible only if the witness is given an opportunity to explain or deny the statement and an adverse party is given an opportunity to examine the witness about it, or if justice so requires. This subrule does not apply to an opposing party's statement under Rule 801(d)(2).

Although the examiner need not show or disclose the prior statement to the witness, the party must do so upon a request by the witness or an adverse party's attorney. MRE 613(a).

When a party seeks to introduce extrinsic evidence of a prior inconsistent statement, it must lay a proper foundation under the rules of evidence:

> [T]he proponent of the evidence must elicit testimony inconsistent with the prior statement, ask the witness to admit or deny making the first statement, then ask the witness to admit or deny making the later, inconsistent statement, allow the witness to explain the inconsistency, and allow the opposite party to cross-examine the witness. [*People v Butsinas*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 364778), slip op at 6-7 (citations omitted).]

Again, the statement of the issue is that the trial court thwarted defense counsel from cross-examining the witness. However, MRE 613(b) and the *Butsinas* decision set forth how admission of a prior inconsistent statement is to occur. Defense counsel did not engage in this procedure. When the prosecutor objected on hearsay grounds, defense counsel simply responded that it was a statement made to the police and that it was offered to address credibility. Defense counsel's attempt to admit this statement was inconsistent with MRE 613(a) and (b). Defendant has not shown that the court erred in its handling of this evidentiary issue, or that his rights under the Confrontation Clause were violated nonetheless. This issue also does not entitle defendant to appellate relief.

## III. PROSECUTORIAL MISCONDUCT

Next, defendant contends that the prosecutor improperly shifted the burden of proof during her rebuttal argument by questioning defendant's failure to present witnesses. We disagree.

"[T]o preserve an issue of prosecutorial misconduct, a defendant must contemporaneously object and request a curative instruction." *People v Isrow*, 339 Mich App 522, 529; 984 NW2d 528 (2021) (quotation marks and citation omitted). When these steps are not taken, the issue is unpreserved and reviewed for plain error. *Id*. Defendant did not object to the prosecutor's closing or rebuttal argument. This issue is unpreserved.

"To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*.

We conclude that defendant failed to demonstrate plain error affecting his substantial rights. During closing argument, the prosecutor set forth the charges and discussed the elements. It was also noted that defendant claimed to have acted in self-defense. In order to do so, the law required defendant to have had an honest and reasonable belief that he was in danger of being killed or seriously injured and that immediate action was necessary. The prosecutor noted that defendant could not kill someone to protect himself from minor injury. The prosecutor then proceeded to play videos addressing shots fired and calls to 911. In one call to 911, the operator answered, but there was only an "open line" and the caller was not identified. One person apparently was heard saying, "Why? Why would he do that?" and the response was "Thad (inaudible)". The prosecutor continued to play 911 calls, police bodycam videos, and discussions between the police and emergency personnel when trying to locate the wounds causing the victim to bleed. The prosecutor highlighted how the victim fell to the ground and the location of his hand. She argued that if the victim had a gun, he would have fallen on it. These videos also showed the victim's body being turned by the first responders to try and locate the gunshot wounds. And Bree, the victim's wife, apparently knew who shot the victim. She mentioned that the shooter was a friend, initially declining to say his name. Eventually, she named defendant and stated that the victim had been trying to calm defendant down. She denied witnessing the actual shooting and expressed fear for the safety of her children.

The prosecutor also played a video of defendant loading a weapon with hollow point bullets; these bullets were found in his basement. The testimony of witnesses addressing how defendant acted that night and the number of shots fired was also summarized. There was also testimony that the victim did not have a gun that evening and that defendant sought to have others lie and say that the victim did.

The prosecutor then argued that defendant had lots of cash in the home and took it from the first-floor closet and from upstairs in order to escape. Defendant also turned off his phone to avoid being detected by the police. The prosecutor asserted that defendant did not have a need to shut off his phone if he had killed someone in self-defense. The prosecutor played jail calls where defendant questioned how much time he would do and how Lajoyia, his girlfriend, could claim his money, which the police had seized. And, during the jail calls and letters, defendant urged friends to lie for him so that he could come home. The prosecutor proffered that this evidence contradicted defendant's self-defense claims. For example, in one jail call, defendant told his girlfriend that he was in jail because people "piss me off." The prosecutor requested guilty verdicts on all charges including first-degree murder.

In his closing argument, defendant reminded the jury of the presumption of innocence and summarized the testimony. He opined that the majority of the witnesses could not provide valuable testimony. He also noted that the prosecutor had to prove beyond a reasonable doubt that defendant did not act in self-defense. Defendant claimed that the prosecutor could not meet this burden. Counsel said that defendant got into an argument about coats, but it had ended. Nonetheless, the victim attacked and grabbed defendant. Defendant stated that he would not fight the victim with his children in the house. At that time, the victim stated that he was going to get "my pull" and walked to his car. Defendant went to retrieve his weapon when the victim came charging at him. At that point, defendant had no choice but to act. In fact, the victim had assaulted defendant several years earlier. Additionally, the victim was involved in an altercation with Donte Nelson earlier in the day at the park, and defendant took away Nelson's firearm. The defense

posited that this was clearly a case of self-defense, and that after the shooting, Bree, the victim's wife, picked up the victim's gun and put it in her car.

And, in responding to the prosecutor's contention that defendant wrote letters to his friends, Kevin Meekhof and Rob Ester, "because he wanted them to testify to what he told them to testify to," defendant's attorney said the letter to Meekhof, which was admitted as a trial exhibit, "basically" told Meekhof to contact defendant's attorney. Further, the content of defendant's letter to Ester was unknown because no one could find Ester.

It was also claimed that the prosecutor could not meet her burden of proof because of uncooperative witnesses, the failure to search Bree's vehicle, and the failure to tie the shooting to the argument over the coat. Simply put, defendant posited that the prosecutor failed to meet her burden of proof to challenge the claim of self-defense.

In rebuttal, the prosecutor challenged defendant's closing argument. With regard to the claim of self-defense and the failure to present certain witnesses such as Rob Ester, the prosecutor stated:

> [Defendant's] trying to make his testimony match that picture. 'Cause he's had that picture. He's had all the evidence. He's trying to create a story that matches that, but he can't. 'Cause the only real story, the truth that matches that, is that the victim was trying to get away from him.

> [Defendant] had no injuries. No bruises. There was no fight. There was no struggle. He wasn't beaten.

> Even assume, let's just assume, which we can test that [the victim] had a gun. He had a gun at his waist. And he's walking toward him, fast. He never threatened to kill [defendant]. He never raised the gun. And the Defendant opens fire. Thirteen shots were heard being fired. That's not self-defense.

> The Defense tried to - - to make you think well, the Prosecutor didn't call these witnesses. They must know something. Well, you know what? The Defense can call them, too. He testified, so he and other witnesses could've testified. He could subpoena them the same way we can. Where are they? Why didn't we subpoena them?

> The officer, he said nobody can locate Rob. Detective [Sergeant Lawrence] Matzen located him, this Rob, mysterious Rob. He located him before the Defendant could get to him. Before he could change his story. He had no information, nothing that changed Detective Matzen's belief about what happened or his investigation.

Defendant contends that this "closing" argument by the prosecutor unconstitutionally shifted the burden of proof to defendant and asked the jury to infer his guilt in light of the failure to call witnesses. We disagree.

The phrase "prosecutorial misconduct" has become a term of art in criminal appeals. *People v Cooper*, 309 Mich App 74, 87; 867 NW2d 452 (2015). But, the term "misconduct" is more appropriately reserved for extreme and generally rare instances when a prosecutor's conduct is illegal or violates the rules of professional conduct. *Id*. at 87-88. Regardless of the terminology employed, this Court examines whether the prosecutor committed errors that deprived defendant of a fair and impartial trial. *Id*. at 88.

Prosecutorial misconduct issues are reviewed on a case-by-case basis. *People v Mullins*, 322 Mich App 151, 172; 911 NW2d 201 (2017). The prosecutor's remarks are reviewed in context and evaluated in light of the defense arguments and the relationship of the comments to the evidence at trial. *Id*. Great latitude is given to prosecutorial arguments, and they are free to argue the evidence and the reasonable inferences arising from the evidence as related to their theory of the case. *Id*. "Otherwise improper prosecutorial conduct or remarks might not require reversal if they address issues raised by defense counsel." *People v Dobek*, 274 Mich App 58, 64; 732 NW2d 546 (2007).

In *People v Fields*, 450 Mich 94, 99-103; 538 NW2d 356 (1995), the defendant claimed that he did not commit a murder, but rather, Joanne Walker, his mistress, committed the offense. Consequently, the existence of Walker became a key issue at trial. The defense asserted that the prosecutor's failure to arrest Walker indicated indifference to the real perpetrator or a vindictive prosecution. The prosecutor questioned the testifying defendant regarding his efforts to locate Walker, and he suggested that the prosecution should have located her. In closing argument the prosecutor argued that Walker did not exist while the defendant argued that she was the shooter. After his conviction, the defendant alleged that the prosecutor shifted the burden of proof to the defendant to prove his innocence through the prosecutor's questions and comments. *Id*. at 104.

The *Fields* Court rejected the contention that the prosecutor shifted the burden of proof, reasoning:

> [P]rosecutorial comment that infringes on a defendant's right not to testify may constitute error. However, where a defendant testifies at trial or advances, either explicitly or implicitly, an alternate theory of the case that, if true, would exonerate the defendant, comment on the validity of the alternate theory cannot be said to shift the burden of proving innocence to the defendant. Although a defendant has no burden to produce any evidence, once the defendant advances evidence or a theory, argument on the inferences created does not shift the burden of proof.

> [Appellate caselaw] has correctly concluded that the prosecutor may comment on the weakness of [a] defendant's alibi, and may observe that the evidence against the defendant is uncontroverted or undisputed, even if [the] defendant is the only one who could have contradicted the evidence or has failed to call corroborating witnesses, or proved what is said it would in its opening statement, and that the defendant has failed to take advantage of available opportunities to pursue matters relevant to his alibi defense.

The nature and type of comment allowed is dictated by the defense asserted, and the defendant's decision regarding whether to testify. When a defense makes an issue legally relevant, the prosecutor is not prohibited from commenting on the improbability of the defendant's theory or evidence.

The prosecutor's comments in this case were proper. His comments did not require an improper adverse inference, did not infringe on defendant's Fifth Amendment right, and did not shift the burden of proof. The state was not absolved of proving each element of the crime beyond a reasonable doubt. [*Id.* at 115-116 (quotation marks and citations omitted).]

In the present case, defendant's closing argument raised an issue pertaining to the victim's conduct. Specifically, defendant alleged that the victim was involved in an altercation with Donte Nelson earlier in the day at the birthday party. Yet, he failed to call Donte Nelson to corroborate the victim's aggressive conduct by having him testify at trial. Also, in closing argument, it was alleged that defendant wrote a letter to Ester, but no one knew what it said because no one could locate him and he did not testify. The prosecutor's rebuttal argument was not designed to shift the burden of proof to defendant, but to respond to defendant's arguments. Prosecutorial remarks may respond to arguments raised by defense counsel, and those arguments, even if prejudicial, do not constitute reversible error. *Dobek*, 274 Mich App at 64.

Thus, although defendant testified at trial and argued, in closing argument, that Donte Nelson and Ester would have supported his self-defense theory of the case, he failed to present those witnesses at trial and claimed that Ester could not be found. Detective Matzen testified that the police continued to investigate the case and seek out witnesses present at the apartment. Matzen noted that Detective Haglund spoke to the Nelson family members and tried to conduct in-person interviews, but was unable to do so. Additionally, Detective Matzen spoke to Ester over the phone and, after getting an initial statement, Ester hung up on the call. Thus, Matzen characterized Ester, Chris Nelson, William Nelson, and Donte Nelson as uncooperative witnesses.

Detective Matzen further testified that defendant was able to send a text message from jail to Lajoyia seeking a phone number for Ester. The detective characterized Ester as an "enigma" because he kept getting mentioned by defendant in jail letters and calls that Ester would "set [him] free." Detective Matzen used the phone number provided by Lajoyia, reached Ester's sister, and asked her to convey that the police wanted to speak with him. Ester called and gave Detective Matzen a statement that did not change the course of the investigation or the detective's opinion about the case. Ester merely confirmed that he was at the party and what he heard. Thus, the evidence elicited at trial indicated that these witnesses, who could be contacted, were uncooperative.

Under *Fields*, the prosecutor did not infringe on defendant's rights or shift the burden of proof. The prosecutor's theory was that defendant became angry over the entry into his closet where drugs and money were kept, an assertion confirmed by Meekhof, defendant's friend. In contrast, defendant presented the alternate theory that he acted in self-defense and should be exonerated. The prosecutor's comments on the validity of defendant's theory did not shift the burden of proof. *Fields*, 450 Mich at 115. "When a defense makes an issue legally relevant, the

prosecutor is not prohibited from commenting on the improbability of the defendant's theory or evidence." *Id*. at 116.

Furthermore, defense counsel did not make a contemporaneous objection to the prosecutor's rebuttal argument to allow the trial court to address the matter and provide a curative instruction. Nonetheless, a review of the trial court's instructions reveals that it advised the jury that it must follow the court's instructions, not the information provided by the lawyers, that the lawyer's arguments and statements were not evidence, the prosecutor's burden of proof regarding first-degree murder, the defense's assertion of self-defense, and the prosecutor's burden pertaining to self-defense, and any question regarding the jury instructions could be raised through the bailiff.

Under the circumstances, defendant failed to demonstrate plain error affecting his substantial rights. Initially, defendant failed to show that a plain error occurred. The prosecutor's comment were consistent with Detective Matzen's testimony regarding contact with the Nelson family and Ester, which indicated it was questionable that their testimony would have supported defendant's theory of self-defense and that they could not be located. Furthermore, a plain error did not occur in light of the *Fields* decision and the fact that the prosecutor, in rebuttal, may respond to defendant's argument. *Dobek*, 274 Mich App at 64. Additionally, defendant failed to show prejudice, that the error affected the outcome of the lower court proceedings. *Carines*, 460 Mich at 763. The general rule is that a defendant does not act in justifiable self-defense when he uses excessive force or when the defendant is the initial aggressor. *People v Guajardo*, 300 Mich App 26, 35; 832 NW2d 409 (2013). There was conflicting evidence regarding whether defendant was the initial aggressor. While defendant asserted that the victim was, Bree testified that the victim stated that defendant "was trippin' " and that the victim was going to calm defendant down. Moreover, defendant was only entitled to raise justifiable self-defense if he did not use excessive force. In the present case, he fired 13 shots at the victim. And casings were recovered from underneath the victim. Thus, defendant continued to fire even after the victim was down on the ground. Consistent with defendant's jail calls, this evidence indicated that defendant was acting in accord with his anger issues. Defendant has not shown prejudice or plain error arising from this unpreserved issue and is not entitled to relief.

## IV. SEVERANCE OF CHARGES

Defendant contends that the trial court abused its discretion by failing to sever the drug charges from the homicide charge. We disagree.

This issue was preserved by the filing of and decision on defendant's motion to sever. *People v Anderson*, 341 Mich App 272, 279; 989 NW2d 832 (2022). "A trial court's decision on a motion to sever charges is reviewed for an abuse of discretion." *People v Thurmond*, 348 Mich App 715, 733; 20 NW3d 311 (2023). "[A]ny factual findings relevant to the question whether joinder is permissible are reviewed for clear error, and any questions of law are reviewed de novo." *Id*. at 733-734. "Clear error exists when the reviewing court is left with a definite and firm conviction that a mistake was made." *People v McDade*, 301 Mich App 343, 356; 836 NW2d 266 (2013).

We conclude that the trial court did not abuse its discretion in denying defendant's motion to sever the drug charges and their accompanying felony-firearm charges from the murder and

felon-in-possession charges. Defendant alleged that he was charged with open murder and weapon offenses related to the shooting. Additionally, defendant was charged with drug offenses and weapon offenses that were not related to the murder. Specifically, he claimed that the drug charges and related weapon offenses were not based on the same conduct or transaction, were not a series of connected acts, and the series of acts were not part of a single scheme or plan contrary to the factors in MCR 6.120(B). When offenses were unrelated, the trial court must sever them and conduct separate trials. Defendant claimed that he would be severely prejudiced by a single trial because his jury might be misled or confused. Also, he could be convicted solely on the sheer number of charges if the prosecutor could present them in a single trial.

The prosecution opposed the severance motion, contending that all charges and circumstances were directly related; they were part of the same initial and ongoing investigation. That is, the charges were "based on the same transaction or series of connected acts." If the trials were severed, the jury would be deprived of the full facts and circumstances pertaining to the murder as well as defendant's state of mind at the pertinent time. It was alleged that defendant's request for severance was designed to "sanitize the murder," and such action would deny the prosecution's right to a fair trial. The prosecution also claimed that, before the victim's murder, defendant argued with someone who had opened his closet to find a coat to wear. Defendant was upset because he kept his drugs and money there. The victim attempted to calm defendant down before defendant shot the victim multiple times. As the officers tried to render aid to the victim, defendant left his home through the rear and fled the state. When the police searched the home, they found multiple firearms as well as cocaine and methamphetamine. One of the guns was stolen. Although Lajoyia claimed that defendant did not shoot firearms, there was video on her phone showing defendant using the stolen firearm. Defendant's firearms, drugs, and money pertained to the motive for the homicide and demonstrated the circumstances surrounding the offenses. Ultimately, defendant was found in Illinois living under a false name and paying rent in cash. Because the offenses were related, defendant's motion was untimely,[4] and the prosecution would suffer prejudice from the delay, the trial court should deny defendant's motion. Additionally, even if the trials were severed, the prosecution would seek to include the drug offenses in the murder trial through MRE 404(b), and the jury would not be confused or misled by the number of charges.

After hearing oral argument on the severance motion, the trial court held:

So, [MCR] 6.120 indicates the rule that applies to joinder and severance. And severance relates back to the same rule as joinder in that the offenses are related for joinder if it's based on the same conduct or transaction or a series of connected acts or a series of acts constituting parts of a single scheme or plan. So, to sever, the Court would need to determine that there is no same conduct or transaction. There is not a series of connected acts or it's not a series of acts constituting parts of a single scheme or plan.

---

[4] An eight-day jury trial was scheduled for January 8, 2024. Defendant filed his motion for severance on November 13, 2023, and the prosecution's answer was filed on December 12, 2023. Two days later, defendant filed a motion to adjourn trial.

And I think the Prosecution has stated clarity [sic] for the Court in regards to the issue of the single scheme or plan. I - - this comes down to a dispute of facts that are not before the Court. And certainly, what the Prosecution has presented is that is a situation where there was a motive. The motive involved drugs and money.

Prosecution is allowed to present testimony about motive. And this is a situation where the parties disagree about whether or not the motive can be substantiated through the evidence. But I don't think it means that the Prosecution is not allowed to present it.

And I don't believe that severing these counts is necessary pursuant to the rule. This does appear to be, based on the offer of proof by the Prosecution, that there was a motive. The motive involved drugs and money. And that is what involved the murder. And they need to present that motive through evidence at the time of trial. I - - I don't believe severance is appropriate at this time.

I - - it is untimely. But I don't think the Court can make a decision based on it being untimely. I would appreciate it if in these cases, people would file their motions earlier so we could deal with them earlier. But at this point in time, I'm not basing my decision on all the untimeliness of the motion.

But I am determining that the motion is denied in regards to severance, because I believe the Prosecution has stated a factual - - a proposed factual basis to support that it is related completely to motive.

MCR 6.120 addresses joinder or severance of charges against a single defendant and provides:

(A) Charging Joinder. The prosecuting attorney may file an information or indictment that charges a single defendant with any two or more offenses. Each offense must be stated in a separate count. Two or more informations or indictments against a single defendant may be consolidated for a single trial.

(B) Postcharging Permissive Joinder or Severance. On its own initiative, the motion of a party, or the stipulation of all parties, except as provided in subrule (C), the court may join offenses charged in two or more informations or indictments against a single defendant, or sever offenses charged in a single information or indictment against a single defendant, when appropriate to promote fairness to the parties and a fair determination of the defendant's guilt or innocence of each offense.

(1) Joinder is appropriate if the offenses are related. For purposes of this rule, offenses are related if they are based on

(a) the same conduct or transaction, or

(b) a series of connected acts, or

(c) a series of acts constituting parts of a single scheme or plan.

(2) Other relevant factors include the timeliness of the motion, the drain on the parties' resources, the potential for confusion or prejudice stemming from either the number of charges or the complexity or nature of the evidence, the potential for harassment, the convenience of witnesses, and the parties' readiness for trial.

(3) If the court acts on its own initiative, it must provide the parties an opportunity to be heard.

(C) Right of Severance; Unrelated Offenses. On the defendant's motion, the court must sever for separate trials offenses that are not related as defined in Subrule (B)(1).

To determine whether joinder is appropriate, a trial court must first determine the pertinent facts and assess whether the facts constitute relevant offenses that would make joinder appropriate. *People v Williams*, 483 Mich 226, 231; 769 NW2d 605 (2009). The plain language of MCR 6.120 permits joinder for "related" offenses, and offenses are related if they consist of "the same conduct" or "a series of connected acts or acts constituting part of a single scheme or plan." When there is a logical relationship between joined counts as well as overlapping proofs, joinder is appropriate. *Id*. at 237. Thus, the admissibility of evidence in other trials is also considered when determining if joinder is appropriate because the joinder of other crimes cannot prejudice defendant. *Id*. There is no temporal requirement found in MCR 6.120, and the acts need not be committed at the same time, but nevertheless must be connected acts or acts constituting a single scheme or plan. *Id*. at 241. Any error in the joinder of cases is not grounds for disturbing the judgment unless refusal to take such action appears to be inconsistent with substantial justice. *Id*. at 243.

In *Thurmond*, the defendant was convicted of inducing another person to become a prostitute or pandering, MCL 750.455(b), third-degree criminal sexual conduct (CSC-III), MCL 750.520d(1)(b), and human trafficking, MCL 750.462b. The victim alleged that she began dating the defendant in the winter of 2018. However, in July 2018, the police learned that the victim was engaged in prostitution at the behest of the defendant. *Thurmond*, 238 Mich App at 720. The defendant had moved to sever the CSC-III charge, alleging that it was based on conduct that occurred in early June 2018, and unrelated to the conduct that gave rise to the other charged offenses. *Id*. at 734. This Court rejected the defendant's challenge, noting that the CSC-III charge was closely related to the other charges. The victim testified that the defendant had developed a personal relationship with her and then exploited it by persuading her to engage in prostitution and then give the money to the defendant. The victim also described the threats, force, coercion, and other tactics that the defendant used to obtain her cooperation. In light of the "ample evidence that all of the charged offenses were related because they involved a series of connected acts or acts constituting parts of a single scheme or plan", this Court concluded that the trial court did not abuse its discretion by denying the defendant's severance motion. *Id*. at 735.

In the present case, defendant contends that MCR 6.120(B) was not satisfied because drugs and money were not located in the closet. We note that although drugs and money were not found in the closet, the prosecutor alleged that the presence of drugs and money in the closet that a guest

-14-

opened to obtain a coat were the impetus for defendant's anger and for the victim's involvement in trying to calm defendant down. The prosecutor claimed that when the police and other first responders arrived on the scene, they gave aid to the victim. At that time, defendant was able to enter his home and remove the drugs and money in the closet. The prosecutor further alleged that defendant left his home through the back door, proceeded to Colp, Illinois, and was using cash to live under a false name. The trial court noted that, although it did not have evidence pertaining to the location of the drugs and money in defendant's home, the prosecutor had connected the acts through motive. The trial court concluded it would not foreclose the prosecutor from conducting a single trial. It is noteworthy that defendant did not request that the trial court conduct an evidentiary hearing and render factual findings on the location of drugs and money.

We disagree with defendant's position that the failure to find drugs and money in the closet warranted severance of the charges. It was the prosecutor's theory that a guest's entry into the closet caused defendant's anger because the closet contained drugs and money. Because defendant had the opportunity to remove those items, the lack of their presence during the police search should not control. Moreover, the prosecutor alleged that defendant was living under an assumed name in Colp, Illinois, using cash to support himself, including to pay his rent. In other words, it is possible that defendant removed the drugs and money to use them while living in a new state.

We also do not conclude that the trial court abused its discretion under the circumstances. In *Thurmond*, 348 Mich App at 734-735, the pandering, CSC-III, and the human trafficking may have occurred at different times, however, the victim testified that the defendant's actions occurred in a series. He initially gained her trust in a dating relationship, elevated it to convincing her to engage in acts of prostitution and give him her earnings, and then used threats, force, and coercion to maintain his control over her. Although the acts may have occurred at different times, this Court nonetheless concluded that they satisfied MCR 6.120(B). There was never any claim that the victim had to provide corroborating evidence of the CSC-III or human trafficking to support a single trial on all charges.

In the present case, it was alleged that there was a birthday party held at a park, and people continued to gather later at defendant's home. A guest entered a first-floor closet to obtain a coat, and this action caused defendant to become very angry. The victim attempted to calm defendant down. Unfortunately, cooler heads did not prevail, and defendant shot and killed the victim. There is no requirement in MCR 6.120(B) that physical evidence be located in advance of trial to corroborate the prosecution's theory. Thus, defendant's claim of error is without merit.

Additionally, any error in the joinder of cases is not grounds for disturbing the judgment unless refusal to take such action appears to be inconsistent with substantial justice. *Williams*, 483 Mich at 243. Defendant contends that the prosecutor sought to pursue one trial in order to refer to defendant as a drug dealer, and it did so at trial. "Although motive is not an essential element of the crime, evidence of motive in a prosecution for murder is always relevant." *People v Unger*, 278 Mich App 210, 223; 749 NW2d 272 (2008). "In cases in which the proofs are circumstantial, evidence of motive is particularly relevant." *Id*. In the present case, the prosecutor had an independent reason to admit the evidence, specifically motive. There were no witnesses that came forward that actually observed the victim's murder. Consequently, the case against defendant was largely premised on circumstantial evidence. Accordingly, the items kept in the closet and defendant's motive to protect those items was particularly relevant. Under the circumstances,

defendant failed to show that the failure to disturb the judgment on this basis would be inconsistent with substantial justice.

## V.  INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant claims that trial counsel was ineffective for failing to timely file a witness list and for failing to investigate alibi witnesses.  We conclude that defendant failed to establish his claim of ineffective assistance of counsel under the circumstances, and therefore, is not entitled to appellate relief.

To preserve a challenge to the effective assistance of counsel, a defendant must move for a new trial or for a hearing under *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973). *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020).  Because defendant failed to pursue these actions, his challenge is unpreserved.  "The question whether defense counsel performed ineffectively is a mixed question of law and fact[.]" *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012).  The appellate court reviews the trial court's factual findings for clear error. *Id*.  Questions of law are reviewed de novo. *Id*.  When a *Ginther* hearing is not held, appellate review is limited to mistakes apparent on the record. *Abcumby-Blair*, 335 Mich App at 227.

The Michigan and United States Constitutions guarantee criminal defendants the right to be represented by an attorney.  Const 1963, art 1, § 20; US Const, Am VI.  A criminal defendant is entitled to the effective assistance of counsel. *People v Otto*, 348 Mich App 221, 231; 18 NW3d 336 (2023).  "A defendant must meet two requirements to warrant a new trial because of the ineffective assistance of counsel." *People v Armstrong*, 490 Mich 281, 289-290; 806 NW2d 676 (2011).  The defendant must first demonstrate "that counsel's performance fell below an objective standard of reasonableness.  In doing so, the defendant must overcome the strong presumption that counsel's assistance constituted sound trial strategy." *Id*. at 290.  In examining defense counsel's performance, "the reviewing court must first objectively 'determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.' " *People v Jackson (On Reconsideration)*, 313 Mich App 409, 431; 884 NW2d 297 (2015), quoting *Strickland v Washington*, 466 US 668, 690; 104 S Ct 2052; 80 L Ed 2d 674 (1984).  Second, the defendant must show that, "but for counsel's deficient performance, a different result would have been reasonably probable." *Armstrong*, 490 Mich at 290.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 US at 694.

The defendant bears the burden of demonstrating the factual predicate for his claim of ineffective assistance of counsel. *People v Douglas*, 496 Mich 557, 592; 852 NW2d 587 (2014).  To demonstrate deficient performance, "the defendant must overcome the strong presumption that counsel's assistance constituted sound trial strategy." *Armstrong*, 490 Mich at 290.  That is, defense counsel is given the strong presumption that adequate assistance was rendered and all significant decisions were made in the exercise of reasonable professional judgment. *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012).  When claiming ineffective assistance premised on defense counsel's unpreparedness, there is a requirement that a defendant show prejudice resulting from this alleged lack of preparation. *People v Caballero*, 184 Mich App 636, 640; 459 NW2d 80 (1990).  This showing must include evidence of an investigation or affidavits

that would reveal information beneficial to the defendant. *Id*. "The failure to make an adequate investigation is ineffective assistance of counsel if it undermines confidence in the trial's outcome." *People v Grant*, 470 Mich 477, 493; 684 NW2d 686 (2004). To succeed on a claim of ineffective assistance premised on the failure to call witnesses, a defendant need not demonstrate a deprivation of a substantial defense. *People v Jurewicz*, 506 Mich 914, 915; 948 NW2d 448 (2020). Rather, the standard applicable to ineffective assistance for the failure to call witnesses is the same for all other such ineffective assistance of counsel claims; it involves consideration of whether counsel's performance fell below an objective standard of reasonableness and, but for counsel's deficient performance, whether there is a reasonable probability that the outcome would have been different. *Id*.[5]

As noted, the defendant bears the burden of demonstrating the factual predicate for his claim of ineffective assistance of counsel. *Douglas*, 496 Mich at 592. Defendant failed to meet this burden. Specifically, he failed to demonstrate that he attempted to call additional witnesses, and the trial court prevented him from doing so for failure to timely file the witness list. Rather, defendant chose to pursue his theory of self-defense and not call other witnesses, despite the court leaving the opportunity open for him to do so. Accordingly, defendant failed to demonstrate that the untimely filing of the witness list caused him prejudice. That is, defendant did not show that, "but for counsel's deficient performance, a different result would have been reasonably probable." *Armstrong*, 490 Mich at 290. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 US at 694.

Defendant also argues that counsel was ineffective for failing to subpoena four crucial witnesses, namely William Nelson, Donte Nelson, Chris Nelson, and Rob Ester. Consequently, defendant claims he was deprived of hearing from crucial alibi witnesses.[6] Again, defendant bears the burden of demonstrating the factual predicate for his claim of ineffective assistance of counsel, and he failed to meet this burden. *Douglas*, 496 Mich at 592.

## VI. HABITUAL-OFFENDER NOTICE

Lastly, defendant contends that the prosecution's failure to file a timely notice and proof of service of its intention to seek an enhanced sentence requires resentencing. In light of the notice

---

[5] Although the *Jurewicz* decision was rendered in an order, not an opinion, "Supreme Court orders that include a decision with an understandable rationale establish binding precedent." *People v Giovannini*, 271 Mich App 409, 414; 722 NW2d 237 (2006).

[6] We recognize that defendant may simply be analogizing to a case involving alibi witnesses. Regardless, the record reflects that defense counsels were aware of Ester and the Nelsons and had subpoenaed them. Unfortunately, the record reflects that they were only successful in serving Ron Nelson, who they opted not to call. Moreover, defense counsel reported "looking for [Ester] for some time." Notably, Detective Martzen testified that the Nelson family members and Ester were contacted; however, the police were unable to conduct in-person interviews with them and characterized them as uncooperative. Under these circumstances, it was crucial for defendant to obtain affidavits from or an offer of proof regarding their testimony in order to obtain relief; he failed to do so.

of the habitual offender in the information and the harmless error standard as set forth in *People v Head*, 323 Mich App 526, 542; 917 NW2d 752 (2018), defendant is not entitled to appellate relief.

Affirmed, but remanded to the trial court for correction of the amended judgment of sentence. We do not retain jurisdiction.

/s/ Anica Letica
/s/ Michael J. Kelly
/s/ Philip P. Mariani